UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SHAWN R. BOUGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No.: 3:18-cv-00204 |
| v. | ) | REEVES/POPLIN |
| | ) | |
| DARREN SETTLES, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This is a pro se prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254. Now before the Court are Petitioner's motion to amend the petition [Doc. 11] and Respondent's motion to dismiss the petition as time-barred [Doc. 13]. Petitioner filed a response in opposition to the motion to dismiss [Doc. 16]. The Court will address these motions in turn.

### I. MOTION TO AMEND

For good cause shown therein, Petitioner's motion to amend [Doc. 11] will be **GRANTED**. As such, Petitioner's amended § 2254 petition [Doc. 11-2] is the operative pleading for all purposes, including the Court's consideration of Respondent's motion to dismiss.

### II. MOTION TO DISMISS

#### A. BACKGROUND

##### 1. Factual Background[1]

Throughout the night of December 19, 1998, and the next morning, Petitioner and Craig

---

[1] Unless otherwise noted, the background facts are taken from the Tennessee Court of Appeals' ("TCCA") opinion affirming the denial of Petitioner's petition for a writ of error coram nobis, in which the TCCA quoted the Tennessee Supreme Court's opinion summarizing the facts of the case. *Bough v. State*, No. E2017-00015-CCA-R3-ECN, 2017 WL 3017289, at * 1–2 (Tenn. Crim. App. July 17, 2017), *perm. app. denied* (Tenn. Oct. 3, 2017).

Shears, both college students, made several visits to hotel room 207 at the Expo Inn in Knoxville in which two female college students were staying. During one of these visits, one of the female college students noticed a gun under the bed where Petitioner was sitting. She told Petitioner not to forget his gun and Petitioner thanked her and put the gun in his sock.

Approximately an hour after Petitioner and Shears left the hotel room for the final time around nine a.m. on December 20, 1998, the female college students heard gunshots in the hotel lobby area. After multiple calls from Petitioner and shortly after the gunshots, Dante Smith came to the hotel in his car to pick up Petitioner and Shears. Smith saw Petitioner and Shears running from the lobby, and Petitioner was carrying a plastic tub with envelopes. According to Smith, Petitioner was talking a lot in the car and stated that he had shot someone and was not sure if he had killed him or not.

Petitioner and Shears later visited Smith's apartment and counted money from the plastic container. During this visit, Petitioner asked Smith to hide the gun for him and for a ride to a bus stop or the airport, both of which Smith refused to do.

When police arrived at the scene of the shooting, the victim told a detective that two tall and slender black males with a small amount of facial hair had come from room 207, asked him for money, and shot him.

Also, a long-time friend of Petitioner's told police that at some point after the robbery and shooting, Petitioner told the friend that Petitioner had tried to "pull a heist" but that the man took too long, so "he let him have it." Further, after Petitioner was arrested, he told police that he had left the hotel around 9 or 9:30 a.m. with Shears by getting a ride from a guy named Ted who had taken them straight to Nashville.

At Petitioner's trial, Shears chose to invoke his Fifth Amendment right not to incriminate himself, rather than testify [Doc. 12-3 p. 36–38]. Shears specifically stated that one of the reasons

that he wished to remain silent during Petitioner's trial even though he had already testified under oath about the underlying incident at his own trial was his "safety in prison" [*Id.* at 39–40].

### 2. Procedural Background

In 2001, a jury convicted Petitioner of one count of felony first-degree murder and one count of especially aggravated robbery [Doc. 12-1 p. 68]. The trial court imposed a sentence of life for the felony murder conviction and a concurrent twenty-one-year sentence for the aggravated robbery conviction [*Id.* at 71, 75]. The TCCA ultimately affirmed these convictions. *State v. Bough*, No. E2002-007170CCA-R3-CD, 2004 WL 50798 (Tenn. Crim. App. Jan 12, 2004); *State v. Bough*, No. E2004-02928-CCA-RM-CD, 2005 WL 100842 (Tenn. Crim. App. Jan 19, 2005), *perm. app. denied* (Tenn. May 23, 2005). Petitioner subsequently filed both a petition for post-conviction relief and a petition for a writ of habeas corpus and the TCCA affirmed the denials of relief for these petitions. *Bough v. State*, No. E2007-00475-CCA-R3-PC, 2007 WL 3026395 (Tenn. Crim. App. Oct. 18, 2007), *perm. app. denied* (Tenn. Feb. 25, 2008); *Bough v. Morrow*, No. E2010-01194-CCA-R3-HC, 2011 WL 2118965 (Tenn. Crim. App. May 24, 2011).

On March 7, 2016, Petitioner filed a petition for a writ of error coram nobis in the state court asserting that an affidavit that Shears signed in 2015 exonerated Petitioner for the murder and robbery underlying his convictions [Doc. 12-44 p. 4]. After an evidentiary hearing, the trial court denied the motion based on its finding that Shears' testimony regarding Petitioner's innocence was not credible, specifically noting that Shears was "quite evasive" at the evidentiary hearing and that Shears' statement that if he had testified at Petitioner's trial, he would have testified that he shot the victim himself, was "in complete contradiction of virtually all other evidence" presented at both Petitioner's trial and Shears' trial [*Id.* at 10–12]. The TCCA affirmed the denial of this petition. *Bough v. State*, No. E2017-00015-CCA-R3-ECN, 2017 WL 3017289 (Tenn. Crim. App. July 17, 2017), *perm. app.*

*denied* (Tenn. Oct. 3, 2017).

On May 15, 2018, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 1 p. 14]. In his memorandum in support of his amended petition [Doc. 11-2], Petitioner acknowledges that his petition would normally be considered time-barred, but asserts that Shears' affidavit and testimony stating that he acted alone with regard to the murder and robbery is newly-discovered evidence establishing that Petitioner is actually innocent that entitles Petitioner to equitable tolling [Doc. 11-2 p. 15–17]. In the alternative, Petitioner asserts that he is entitled to equitable tolling because his attorney told him that he was pursuing an action in federal court based on the denial of the writ of error coram nobis and/or that Petitioner could do so himself [*Id.* at 17–18]. Petitioner also sets forth a freestanding claim of actual innocence based on Shears' affidavit and testimony and other claims for relief under § 2254 in his petition [*Id.* at 5–12].

### B. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786

(2011)). Further, where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### C. ANALYSIS

#### 1. Equitable Tolling

##### a. Actual Innocence

As set forth above, Petitioner first asserts that a 2015 affidavit and testimony from Shears establishes Petitioner's actual innocence of the murder and robbery underlying his convictions and therefore entitles him to equitable tolling of the AEDPA statute of limitations for his § 2254 claims [Doc. 11-2 p. 17]. The AEDPA statute of limitations is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Perkins v. McQuiggin*, 670 F.3d 665, 670 (6th Cir. 2012). One way that a petitioner can demonstrate that he is entitled to equitable tolling of the AEDPA statute of limitations is by presenting "a credible claim of actual innocence." *Cleveland v. Bradshaw*, 693 F.3d 626, 632–33 (6th Cir. 2012) (citing *Souter v. Jones,* 395 F.3d 577, 601 (2005)). In order to establish such a claim:

> a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 [] (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup* [*v. Delo*, 513 U.S. 298, 324 (1995)]. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321[.]

*Souter*, 395 F.3d at 590. Thus, the threshold inquiry in assessing whether a claim of actual innocence is credible is "whether new facts raise sufficient doubt about the petitioner's guilt to undermine

confidence in the result of the trial." *Id*. (citing *Schlup*, 513 U.S. at 316).

In Shears' affidavit and testimony upon which Petitioner relies to support his claim of actual innocence, Shears recants the testimony he gave at his own criminal trial regarding Petitioner's participation in the murder and robbery and now states that Petitioner was not present during these events [Docs. 11-1 and 12-45]. Courts, however, generally view recantation testimony with great suspicion. *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) (noting that "affidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion"). The timing and circumstances surrounding such recantations is also relevant to determining their credibility. *See McQuiggin*, 133 S. Ct. at 1935–36 (noting that the timing of newly discovered evidence of innocence is relevant to its reliability); *Freeman v. Trombley*, 483 F. App'x 51, 61–64 (6th Cir. 2012) (finding that recantation evidence presented ten years after the witness first testified under oath was insufficient to support gateway actual innocence claim where there was no explanation for the significant delay).

Petitioner repeatedly asserts that Shears' new testimony regarding his innocence is credible, but does not explain Shears' significant delay in coming forward with these new allegations. Moreover, the trial court correctly found that even if Shears had testified at Petitioner's trial that Petitioner was not involved in or present at the scene of the murder and robbery at Petitioner's trial in a manner consistent with his 2015 affidavit, any such testimony would have lacked credibility due to Shears' prior testimony under oath at his own trial that Petitioner, not Shears, had committed the murder and robbery, as well as the substantial other evidence of Petitioner's involvement in the murder and robbery. Further, the coram nobis court specifically found that Shears' testimony at the evidentiary hearing was not credible and habeas courts generally defer to trial court credibility findings, as the trial court is in the best position to determine witness credibility. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (holding that §

2254 does not give habeas courts "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

In short, nothing in the record allows the Court to overcome its great suspicion about Shears' decision to recant his testimony under oath approximately fifteen years after he gave that testimony or to find that Shears' affidavit and testimony raise doubts about Petitioner's innocence that undermine confidence in the jury's finding that Petitioner is guilty. As such, Petitioner has not met his burden of establishing that newly-discovered evidence of his actual innocence entitles him to equitable tolling of the AEDPA statute of limitations.

### b. Attorney Negligence

Petitioner also argues that he is entitled to equitable tolling of the statute of limitations because his attorney[2] misled him by stating that he was pursuing Petitioner's case in federal court and/or that Petitioner could file a motion in federal court based upon the denial of the petition for a writ of error coram nobis [Doc. 11-2 p. 17].

A habeas petitioner may be entitled to equitable tolling of the statute of limitations if he establishes that he has been "pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented timely filing." *Hall v. Warden*, 662 F. 3d 745, 749 (6th Cir. 2011) (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010)). "The doctrine of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citations and internal quotations marks omitted).

---

[2] While it is somewhat unclear, it appears that Petitioner is referring to his counsel for the petition for a writ of error coram nobis.

Even if the Court assumes that Petitioner's allegations regarding his attorney's actions are true, they do not entitle Petitioner to equitable tolling, as Petitioner's time to file his § 2254 petition had run out long before those events occurred. The AEDPA provides a one-year statute of limitations for the filing of an application for a federal writ of habeas corpus that begins to run when the judgment became final at the conclusion of direct review. 28 U.S.C. § 2244(d)(1).

Petitioner's AEDPA clock began to run on August 22, 2005, ninety days after the day after the Tennessee Supreme Court declined to review the TCCA's order affirming Petitioner's convictions, as that is the last day on which Petitioner could have filed an application for the United States Supreme Court to review his convictions. The clock ran for two-hundred and sixty-nine days until May 18, 2006, at which time Petitioner paused the clock by filing his petition for post-conviction relief [Doc. 12-28 p. 4, 58]. The clock then began to run again on February 26, 2008, the day after the Tennessee Supreme Court denied Petitioner's application for permission to appeal the TCCA's denial of Petitioner's post-conviction petition. At that point, Petitioner had ninety-six days to file a § 2254 petition or to pause the clock by properly filing any other application for collateral relief from the state court. As the ninety-sixth day was a Sunday, however, Petitioner's AEDPA statute of limitations did not expire until ninety-seven days later on June 2, 2008.

Petitioner, however, did not file his petition for a writ of error coram nobis with the state court until March 7, 2016 [Doc. 12-44 p. 4]. As such, none of Petitioner's attorney's actions regarding this filing could have affected the AEDPA statute of limitations. *See Vroman*, 346 F.3d at 602 (holding that while a properly filed application for state post-conviction or other collateral relief may toll the statute of limitations, it "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run").

8

Thus, even accepting Petitioner's allegations regarding his attorney's actions with regard to the petition for a writ of error coram nobis as true, nothing in the record indicates that Petitioner was pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing a § 2254 petition. As such, Petitioner is not entitled to equitable tolling of the AEDPA statute of limitations based on these allegations.

### 2. Freestanding Claim of Actual Innocence

Petitioner also alleges that he is entitled to relief under § 2254 based on a "freestanding" claim of actual innocence as established by the newly-discovered evidence from Shears. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation in the underlying state criminal proceeding," however. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (citing *Townsend v. Sain*, 372 U.S. 293, 317 (1963)); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007) (holding that a freestanding innocence claim is not cognizable without allegations of constitutional error at trial). Moreover, even if such a claim were cognizable in this action, the newly-discovered evidence from Shears is not credible and does not undermine the Court's confidence in the jury's finding that Petitioner is guilty for the reasons set forth above. As such, Petitioner has not made the "extraordinarily high" threshold showing of actual innocence that such a claim would require. *Herrera*, 506 U.S. at 417.

### D. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. When a district court

denies a habeas petition on a procedural basis without reaching the merits of the underlying claim(s), a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017).

In this case, reasonable jurists would not debate the correctness of the Court's decision that Petitioner is not entitled to equitable tolling of the statute of limitations and to dismiss the § 2254 petition as time-barred. Accordingly, the Court will **DENY** issuance of a COA and **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), 24(a)(1), 24(a)(4).

## IV. CONCLUSION

For the reasons set forth above:

1. Petitioner's motion to amend/revise his petition [Doc. 11] will be **GRANTED**;

2. Respondent's Motion to Dismiss [Doc. 13] will be **GRANTED**;

3. This action will be **DISMISSED**;

4. No COA shall issue; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith.

**AN APPROPRIATE ORDER WILL ENTER**.

**E N T E R :**

_____
**UNITED STATES DISTRICT JUDGE**